IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JULIE VANTINE,                         )
                                       )
             Plaintiff,                )
                                       )
v.                                     )   Case No. CIV-16-465-JHP-KEW
                                       )
NANCY A. BERRYHILL, Acting             )
Commissioner of Social                 )
Security Administration,               )
                                       )
             Defendant.                )

**REPORT AND RECOMMENDATION**

Plaintiff Julie Vantine ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's applications for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 44 years old at the time of the ALJ's decision. Claimant obtained her GED. Claimant has worked in the past as a cook and waitress. Claimant alleges an inability to work beginning September 8, 2014 due to limitations caused by DVT, PTSD, anxiety disorder, depressive disorder, degenerative disc disease, arthritis, MRSA, obesity, C-Diff, an inability to walk, blood clot, back injury, bone infection, and foot cysts.

### Procedural History

On September 15, 2014, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On April 18, 2016, a hearing was held before Administrative Law Judge ("ALJ") Larry Shepherd by video with Claimant appearing in Ardmore, Oklahoma and the ALJ presiding from Oklahoma City, Oklahoma. By decision dated June 29, 2016, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's request for benefits. On September 2, 2016, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) reaching an RFC which found Claimant could perform a limited range of sedentary

work; (2) failing to properly weigh the opinion of Claimant's treating physician; and (3) failing to include mental limitations in the RFC.

## RFC Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity, complex regional pain syndrome, osteomyelitis of the right ankle, degenerative disc disease, mild peripheral vascular disease of the the lower extremities, history of DVT, post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, and major depressive disorder. (Tr. 23). The ALJ concluded Claimant could perform a limited range of sedentary work. In so doing, he found Claimant could lift/carry ten pounds occasionally and less than ten pounds frequently; sit for about six hours out of an eight hour workday; stand and walk for at least two hours during an eight hour workday; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Claimant could not climb ladders, ropes, or scaffolds. She could not use right foot controls and required a cane to ambulate. Claimant could understand, remember, and carry out simple, routine, and repetitive tasks. She could relate to others on a superficial work basis and could respond to usual work situations. (Tr. 25).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of

document preparer, hand painter, and sorter, all of which were found to exist in sufficient numbers in the regional and national economies. (Tr. 33). As a result, the ALJ concluded Claimant was not under a disability from September 8, 2014 through the date of the decision. Id.

Claimant contends the ALJ erred in reaching an RFC for Claimant to perform less than a full range of sedentary work. She asserts that the ALJ was required to "discuss how he considered" the ruling and "why this was (yet again) that extremely rare situation that obviated the well-settled Ruling. . ." of Soc. Sec. R. 96-9p which provides

> PURPOSE: To explain the Social Security Administration's policies regarding the impact of a residual functional capacity (RFC) assessment for less than a full range of sedentary work on an individual's ability to do other work. In particular, to emphasize that:
>
> 1. An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare.
>
> 2. However, a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of "disabled." If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience.
>
> *Titles II & XVI: Determining Capability to Do Other*

>   *Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, Soc. Sec. R. 96-9P, 1996 WL 374185, *1 (S.S.A. July 2, 1996).

Nothing in this ruling suggests that an ALJ is required to expressly explain the basis for finding a claimant to be in the "relatively rare" circumstance of being capable of performing work at less than a sedentary level. Of course, an ALJ must explain the basis for any RFC determination but no special finding is required either in the rulings, regulations, or case authority for finding a claimant capable of less than sedentary work. In this case, the ALJ consulted with a vocational expert to ascertain whether sufficient work in this reduced range existed to support his step five findings and concluded that it did. No further discussion or justification was required.

Claimant next challenges the RFC finding with regard to her specific conditions. She first appears to contend the credibility finding on pain by the ALJ was erroneous or not adequately considered. The ALJ discounted Claimant's credibility on her pain assessments because (1) medical records did not support her contention of "a complete inability to move the foot", as an evaluation in January of 2016 noted she had good range of motion in the ankle and was able to dorsiflex to approximately five degrees; (2) her pain assessments to various medical providers were

inconsistent, ranging from a 3-4 out of 10 to 8 out of ten; (3) a need for assistive device to ambulate only arose after the administrative hearing; (4) many of Claimant's complications were secondary to her non-compliance with treatment recommendations, such as wearing a boot or using crutches after her surgery which had complicated the healing process; and (5) Claimant's asserted inability to place any pressure on her right foot was not supported by the medical record. (Tr. 27-28).

The ALJ also determined that Claimant's activities were not consistent with the level of her complaints. Specifically, the ALJ acknowledged a function report from January of 2015 which reported Claimant prepared microwave meals, did laundry, drove a vehicle, shopped weekly with a wheelchair, managed her funds, read, watched movies, and engaged in daily socialization. (Tr. 29; 279-81). In April of 2015, Claimant reported no problems with personal care, did not require special reminders to take care of personal needs and grooming, did not need reminders to take medication, prepared her own microwave meals, folded clothes, drove and rode in a car, shopped twice a month, pays bills, counts change, handles finances, read, watch TV, play games on Facebook daily. She stated she does not spend time with others, had not problem getting along with others, but had been "pretty much homebound." (Tr. 313-17).

It is well-established that "findings as to credibility should

be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. The ALJ's findings on Claimant's credibility were well-supported by the medical evidence. He provided an adequate affirmative link between the objective record and the diminished weight given to Claimant's

subjective statements.

Claimant also challenges various specific statements made by the ALJ concerning the medical record. The ALJ noted that Claimant's primary care provider stated in her notes that Claimant had "limited mobility" but concluded the provider did not specify whether she was referring to Claimant's ambulation or her foot. (Tr. 27). Claimant contends she cannot walk/stand for the two hours required for sedentary work due to her foot problems, which included the removal of her Achilles tendon.

Concentrating upon this particular consideration, Dr. Lloyd Landis, Claimant's podiatrist, provided a medical source statement dated March 27, 2015 which indicated Claimant could not stand or walk for any time period and required the use of a cane to ambulate. (Tr. 766). In May of 2015, Dr. Landis acknowledged Claimant was in a lot of pain and discomfort because of her heel with some limited motion at the ankle. He also noted that the MRI report on Claimant read abnormal possibly consistent with osteomyelitis. He assessed Claimant with possible complex regional pain syndrome but he also found that "we will get her started on aggressive physical therapy to get her back walking on this." (Tr. 30, 641).

Claimant's treating physician, Dr. Addie Gratz, noted in her

records that Claimant must elevate her right lower extremity at a minimum of 50 percent of the time. (Tr. 777). She also recommended that Claimant be kept off of her leg until occupational therapy had deemed her a low fall risk or a complete safety audit is performed to determine whether it is deemed safe for Claimant to ambulate or bear weight on the leg. Id. The ALJ rejected this statement, finding (1) Dr. Gratz appeared to provide the information at Claimant's request in connection with the disability proceedings; (2) Dr. Gratz provided no objective medical evidence to support the finding; (3) Dr. Gratz failed to specify the degree of edema found in Claimant's right foot; (4) an arterial ultrasound found no occlusion in Claimant's bilateral lower extremities and only mild peripheral artery disease; and (5) her opinion was at odds with that of Dr. Landis who gave no indication of a need to elevate Claimant's leg. Accordingly, the ALJ gave Dr. Gratz's opinion "little weight." (Tr. 31).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical

11

facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

Moreover, the ALJ specifically asked the vocational expert whether a limitation to ambulation with a cane would preclude Claimant from performing the three representative jobs identified by the expert. The expert stated it would have no impact. (Tr. 64). The elevation requirement would preclude employment but the ALJ validly determined that Dr. Gratz was the sole provider who referenced the requirement. Indeed, to the contrary, Dr. Landis proposed physical therapy for Claimant to get her walking. The ALJ's RFC assessment was supported by substantial evidence.

### Treating Physician Opinion

Claimant also contends the ALJ failed to provide a weight for Dr. Gratz's opinion. Claimant's assessment fails to recognize that the ALJ gave Dr. Gratz's opinion, particularly on the requirement for elevation, "little weight" and provided a legitimate basis for doing so. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).

### Consideration of Mental Impairments

Claimant also asserts the ALJ "failed to include proper limitations related to [her mental impairments] in the claimant's RFC." The ALJ found Claimant had severe mental impairments of PTSD, generalized anxiety disorder, and major depressive disorder. (Tr. 15). Contrary to Claimant's assertions, the ALJ included restrictions in the RFC to understanding, remembering, and carrying out simple, routine, and repetitive tasks as well as relating to others on a superficial work basis and responding to usual work situations. (Tr. 25). Claimant fails to specify any additional restrictions which should have been included in the RFC which were directly attributable to her severe mental impairments. The ALJ's restrictions are supported by the record as outlined in the decision.

### Conclusion

The decision of the Commissioner is supported by substantial

evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of February, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE